793 F.2d 52
 55 USLW 2001, 5 Fed.R.Serv.3d 117
 Lee STERLING and Thomas Lapiana, Plaintiffs-Appellants,
Housing Council of New York, Inc., Plaintiff-Intervenor-Appellant,
v.
ENVIRONMENTAL CONTROL BOARD OF the CITY OF NEW YORK and the
City of New York, Defendants-Appellees.
 No. 1292, Docket 85-7229.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 12, 1985.
Decided June 5, 1986.
 
 Arthur R. Miller, Cambridge, Mass. (Lionel A. Marks, New York City of counsel), for plaintiffs-appellants.
 Joan E. Handler, New York City (Frederick A.O. Schwartz, Jr., Corp. Counsel, of City of New York, Francis F. Caputo, Susan M. Shapiro, New York City, of counsel), for defendants-appellees.
 Before NEWMAN and WINTER, Circuit Judges, and COFFRIN, District Judge.*
 WINTER, Circuit Judge:
 
 
 1
 Lee Sterling and Thomas Lapiana, two absentee landlords of multiple dwelling housing units in New York City, and the Housing Council of New York, Inc., an umbrella organization of multiple dwelling landlord groups, appeal from a judgment upholding chapter 623 of the New York Session Laws of 1979 (formerly N.Y. City Charter Sec. 1404(d)(2)) as constitutional. This statute once governed issuance of summonses for violations of New York City's sanitation code. Appellants claim, inter alia, that the "nail and mail" procedure provided by the statute failed to provide adequate notice of violations as required by federal due process. After extended proceedings covering several years, including a trial and several factfinding hearings before a magistrate, final judgment was entered for defendants. This judgment, which held the statute constitutional both on its face and as applied, was based in large part on: (i) the fact that appellees had complied with instructions from the district court to reform their enforcement practices and to have the statute amended; and (ii) the assumption that there were no outstanding violations based on the earlier statute and enforcement practices that the City was seeking to enforce. Because default judgments against Sterling and Lapiana based on the earlier statute are still the subject of enforcement activity, we must address the merits. We find that chapter 623 was unconstitutional as applied to them, and reverse.
 
 BACKGROUND
 
 2
 This action was brought to challenge the processes formerly used by New York City to enforce its sanitation code. The statute in question is Section 1404(d)(2) of the New York City Charter, as amended by chapter 623 of the 1979 New York Session Laws ( "chapter 623" or "the 1979 statute" ). Chapter 623 provided an alternative method to personal service for serving notice of sanitation violations on offending building owners.[1] Use of this method required that a copy of the notice of violation be affixed in a conspicuous place on the building in question, with another copy mailed to "the person" on the premises upon whom service would be proper. This method of service is commonly referred to as nail and mail. Nail and mail service was to be used only after "a reasonable attempt has been made to deliver such notice to [an appropriate] person in such premises." 1979 N.Y.Laws ch. 623.
 
 
 3
 Sanitation Enforcement Agents ( "SEA's" ), who were street patrolmen employed by the Department of Sanitation, were responsible for detecting and citing violations of the sanitation code. When using nail and mail process, an SEA was to complete a summons listing relevant information such as the location of the premises being cited, the time the violation was observed, and the nature of the violation (e.g., improper trash receptacles). The "nailed" copy of this "notice of violation" would be taped in a conspicuous place in the entranceway of the premises. The Environmental Control Board ( "ECB" ), the agency responsible for adjudication of sanitation violations, would then mail a copy of the notice to the same premises. This letter was usually addressed to "Agent." The notice constituted prima facie evidence of the violation and, if no response was received from a building owner, the ECB would enter a default judgment and impose a fine against the owner. Although substantial numbers of "mailed" notices of violation were returned as undelivered, the ECB made no attempt to record them upon return or to consider such a return as evidence of non-service.
 
 
 4
 In July, 1980, plaintiffs Lee Sterling and Thomas Lapiana, who were the subjects of such default judgments, brought suit pursuant to 42 U.S.C. Secs. 1983, 1985, 1988 and New York Civil Rights Law Sec. 11 (as later amended), alleging inter alia that nail and mail service was unconstitutional because it did not provide adequate notice under due process standards. They sought damages, declaratory relief and an injunction. In November, 1980, the Housing Council of New York, Inc. was granted leave to intervene.
 
 
 5
 In April, 1982, the case was tried before a jury in the Eastern District. At the close of the evidence, however, the judge dismissed the claims for damages under Section 1983, deemed the case an action in equity for declaratory and injunctive relief, and submitted the case to the jury as an advisory jury pursuant to Fed.R.Civ.P. 39(c). In answers to special interrogatories, the jury made several findings favorable to plaintiffs, including a finding that the nail and mail process was not "fairly designed and applied to give notice in a reasonable period that the law has been violated." However, the judge entered an interim decision ruling in defendants' favor on all but one of the claims. The judge ruled that chapter 623 was constitutional on its face, relying largely on Greene v. Lindsey, 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982), a case decided after the jury in the instant case had made its findings.
 
 
 6
 The only issue left open was the constitutional validity of the nail and mail statute as applied. The district court found that " [t]here was considerable evidence adduced that, at least in its earlier stages, the program of enforcement was inadequately supervised, leading to unnecessary and unacceptable burdens on some property owners." These enforcement difficulties were outlined in an October, 1980 report from the Sanitation Inspector General to the Commissioner of the New York Department of Sanitation ( "Inspector General's report" ). The report, a trial exhibit, was based on covert observation of randomly selected agents responsible for issuing the summonses. It revealed widespread abuse of the nail and mail process.[2] The district court noted, however, that changes in administration and procedure had occurred between the commencement of the suit and the time of trial. It ordered further hearings to determine, inter alia: (i) the extent of training and supervision of enforcement officers to ensure equitable and proper enforcement of the law; and (ii) the reliability of mailed notice in reaching the proper recipient. The case was then referred to a magistrate for hearings.
 
 
 7
 After holding hearings, the magistrate issued an extensive report on October 3, 1983, which recommended that chapter 623 be found constitutional as applied. As to the first issue, the magistrate's report found that " [s]ince January, 1981, the [Sanitation Department had] made a good faith effort to intensify the training, supervision and retraining of [SEA's] and to respond to complaints regarding violations cited and the allegedly improper use of nail and mail service of summonses."
 
 
 8
 On the second issue--reliability of the mailed notice in reaching the intended recipient--the report found that since 1981 the Department of Sanitation had followed a policy of dual mailings of copies of the violations. One copy was mailed to the address listed on the summons, and another copy was mailed to the person listed in the files of the New York City Department of Housing and Preservation ( "HPD" ), or of the New York City Department of Finance, as the owner or managing agent of the building responsible for the violation. This was pursuant to a triennial registration program requiring owners of multiple occupant dwellings to register their address with HPD. Because HPD was phasing in a program of compiling such files over a three-year period, however, it appears that the second mailings were not made to all absentee landlords until 1984.
 
 
 9
 In November, 1983, the district court stated that it would accept the recommendation of the magistrate if the defendants proved that certain specified procedures were in place and if the defendants successfully sought to have Section 1404(d)(2) amended by the state legislature to codify the Department of Sanitation's evolving practice with respect to mailing a notice to the address of the owner or managing agent as listed in the HPD's files.
 
 
 10
 In April, 1984, the judge denied an oral motion for class certification and referred all outstanding motions back to the magistrate. Final resolution of the case was delayed pending amendment of the statute. The amendment, chapter 944 of the 1984 New York Session Laws, became effective in August, 1984. In October, the magistrate issued a report finding that the defendants had complied with the conditions imposed by the trial judge. The report again recommended that Section 1404(d)(2) be found constitutional as applied.
 
 
 11
 On February 27, 1985, the judge closed the case. The final judgment adopted and incorporated the interim 1982 decision of the court, as well as the magistrate's prior reports and recommendations. The judgment was entered on the understanding that there were no outstanding default judgments pending against plaintiff Lapiana, and that the ECB would reopen proceedings on all eleven default judgments pending against plaintiff Sterling. In dismissing the case, the judge stressed the great improvements that had been made during the course of the litigation and concluded that plaintiffs had received all the relief they had sought.
 
 
 12
 On appeal, plaintiffs contend, inter alia, that chapter 623 is unconstitutional, and that the district court erred in refusing to certify a class.
 
 DISCUSSION
 1. The Constitutional Claims
 
 13
 Appellants claim that the nail and mail method of serving process under the 1979 statute was unconstitutional as applied to absentee New York City landlords such as Sterling and Lapiana. They base their claim partly upon alleged enforcement abuses prevalent during the early period following passage of the 1979 law, and partly upon the inadequacy of nail and mail as a method of serving sanitation summonses upon absentee owners or landlords. Because we base our decision on the latter ground, we do not reach the issues raised by the enforcement abuses in the early period.
 
 
 14
 In rebutting appellants' due process claims, appellees rely on the 1984 amended statute. They contend that the 1979 statute is now irrelevant. However, appellees are still seeking to enforce default judgments entered against Sterling and, although the record here is less clear, against Lapiana under the prior statutory scheme. If those default judgments are based on constitutionally invalid service of process, subsequent amendments to the governing law cannot validate the earlier judgments.
 
 
 15
 Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). We do not believe that the 1979 statute provided such notice in the case of absentee landlords in New York City. " [A] statute ... may be held constitutionally invalid as applied when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question." Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 787, 28 L.Ed.2d 113 (1971). Notices posted on exterior doors of urban multiple residences may well disappear quickly due to forces human or natural, and absentee landlords are likely never to learn of such a notice. Tenants in urban settings may have little incentive to protect the interests of absentee owners, and chance alone seems to be the principal determinant of whether the "nailed" notice reaches the owner.
 
 
 16
 In Greene v. Lindsey, 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982), the Supreme Court invalidated a statute that allowed notice of a forcible entry or detainer action to be posted on a tenant's door. The Court noted that in many cases posting would be likely to afford actual notice, id. at 452, 102 S.Ct. at 1879, but concluded that mere posting on an apartment door, without further steps such as mailing, did not satisfy the minimum standards of due process. Id. at 453, 102 S.Ct. at 1879. The likelihood that the posted notices in the instant case will reach the intended recipient is less than in Greene, because owners such as appellants do not live on the premises.
 
 
 17
 The mailing required by the 1979 statute did not make up for the deficiencies of the "nailed" notice so far as absentee landlords are concerned. The statute did not require that a copy of the summons be mailed to the business address of the property owner. Instead, it stated that "a copy shall be mailed to the person at the address of such premises." 1979 N.Y.Laws, ch. 623. "The premises" are merely the building where the notice was posted, while "the person" is apparently a reference to "a person in such premises upon whom service may be made." See supra note 1. A copy of the summons was thus mailed to the address where the citation was issued, usually bearing the additional notation "Agent" on the envelope.
 
 
 18
 Because many landlords do not receive mail at buildings they own and because "Agent" may not alert postmen to the purpose of the mailing, the evidence shows that the mailed notices frequently did not reach the landlords. A substantial number of "mailed" notices were returned as undelivered but were not monitored by ECB. Rather, it entered a default judgment, which, in circumstances not relevant here, might later be reopened. Even when reopening was granted, moreover, a defendant was left to proving the negative of non-receipt by oral testimony because the ECB assumed that if the "mailed" notice was not delivered, the "nailed" notice would suffice.[3] Because we regard the "nailed" notice as wholly unreliable with regard to absentee landlords, we believe that the statute can be saved only if the "mailed" notice is constitutionally adequate standing alone. For the reasons stated, however, the required mailing is not reasonably calculated to provide notice to absentee landlords, cf. Greene, 456 U.S. at 455, 102 S.Ct. at 1880, and default judgment against such landlords should not have been entered.
 
 
 19
 Appellees argue that appellants could have ensured their receipt of summonses merely by placing and monitoring an "owner's mailbox" at each of their buildings. However, the Supreme Court has made clear that "a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation." Mennonite Board of Missions v. Adams, 462 U.S. 791, 799, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983).
 
 
 20
 Finally, a statutory requirement that landlords register their mailing addresses with the City and that a copy of the mailed notice be sent to that address was feasible and would have greatly increased the likelihood of actual notice to absentee landlords. See Schroeder v. City of New York, 371 U.S. 208, 212-13, 83 S.Ct. 279, 282, 9 L.Ed.2d 255 (1962); Walker v. City of Hutchinson, 352 U.S. 112, 116, 77 S.Ct. 200, 202, 1 L.Ed.2d 178 (1956). In light of the deficiencies described above, the 1979 statute's failure to require this second mailing renders that law unconstitutional as applied to defendants,[4] because without it they were deprived of constitutionally valid notice.[5]
 
 2. Class Action Status
 
 21
 Appellants claim that the lower court erred in denying a motion to certify the case as a class action. This motion was made three and one-half years after commencement of the lawsuit, after a full trial, and after two extensive rounds of hearings before a magistrate. Whether a case should proceed as a class action is "peculiarly within the discretion of the trial judge," Becker v. Schenley Industries, Inc., 557 F.2d 346, 348 (2d Cir.1977), and a party's failure to move for class certification until a late date is a valid reason for denial of such a motion. See Green v. Philbrook, 576 F.2d 440, 446 (2d Cir.1978). The district judge was thus well within his discretion in denying appellants' motion for class certification.
 
 CONCLUSION
 
 22
 We find that the 1979 statute was unconstitutional as applied to absentee owners of multiple dwelling housing units against whom default judgments were entered. We remand to the district court for the issuance of appropriate injunctive and declaratory relief.
 
 
 
 *
 The Honorable Albert W. Coffrin, Chief Judge, United States District Court for the District of Vermont, sitting by designation
 
 
 [1]
 Chapter 623 amended Sec. 1404(d)(2) of the New York City Charter to read as follows:
 (2) The environmental control board shall not enter any final decision or order pursuant to the provisions of paragraph one of this subdivision unless the notice of violation shall have been served in the same manner as is prescribed for service of process by article three of the civil practice law and rules or article three of the business corporation law, except that service of a notice of violation of any provision of the charter or administrative code, the enforcement of which is the responsibility of the commissioner of sanitation and over which the environmental control board has jurisdiction, may be made by affixing such notice in a conspicuous place to the premises, the occupancy of which caused such violation, provided that such notice may only be affixed where a reasonable attempt has been made to deliver such notice to a person in such premises upon whom service may be made as provided for by article three of the civil practice law and rules or article three of the business corporations law. When a copy of such notice has been affixed, pursuant to this paragraph, a copy shall be mailed to the person at the address of such premises; proof of such service shall be filed with the Environmental Control Board within twenty days; service shall be completed within ten days after such filing.
 1979 N.Y.Laws, ch. 623.
 
 
 [2]
 The October, 1980, Inspector General's report found that SEA's operated under a "guideline" that 20 summonses be issued daily, without regard to the type of service used. Because the SEA's found the nail and mail process entailed less work than personal service, perhaps over 90 percent of summonses were issued by that method. Further, many SEA's issued their daily quota of citations during the morning hours, writing afternoon times on some of the violation forms to create the appearance of day-long work. This particular abuse was facilitated by the use of nail and mail because no one on the spot could challenge the incorrect time written on the posted notice. More than half (58.3%) of the SEA's observed had engaged in this activity at some point during the Inspector General's survey. Because nail and mail was so easy, some SEA's bypassed violations at buildings where personal service would be necessary, and then issued a nail and mail summons to an adjacent building. The Inspector General's Report concluded that " [t]he lack of proper field supervision [was] a major contributing factor to poor or improper performance by Sanitation Patrolmen."
 
 
 [3]
 The effect of the statute is demonstrated by the proceedings against Sterling. He had several default judgments entered against him for violations between 1980-82. Chief Judge Weinstein ordered ECB to reopen those judgments. A hearing was held in 1985 at which Sterling claimed not to have received notice. This claim was rejected on the grounds that "Sterling admits to not having personal knowledge of the facts and circumstances surrounding the issuance of each [notice of violation ...] I find that respondent's explanation is insufficient to rebut respective prima facie cases herein." The problem faced by absentee landlords claiming a lack of service was of course aggravated by ECB's failure to monitor returned notices of violation in the period in question
 
 
 [4]
 Although dual mailings were not required by law until passage of the 1984 statute, the ECB apparently has, since 1981, gradually phased in a policy of landlord registration and of mailing an additional copy of the summons to that address. This change was one of the reforms adopted under the supervision of the district court, and codification of this requirement was accomplished by the 1984 statute. Since the full implementation of this policy appears to have coincided roughly with the amendment requiring such a mailing, it cannot affect our ruling. Moreover, extrastatutory measures cannot render valid a statute unconstitutional on its face. See Wuchter v. Pizzutti, 276 U.S. 13, 24, 48 S.Ct. 259, 262, 72 L.Ed. 446 (1928). We see no reason why such measures can validate a statute invalid as applied to one group
 
 
 [5]
 We do not decide whether the 1979 statute provided adequate notice to owners of multiple residences who lived on the premises, although the question does not appear to merit serious consideration. The particular default judgments before us relate only to Sterling and Lapiana