Abraham **FRIEDMAN, Y & J Enterprises Inc., Frieba Company Inc., Petite Home Products Inc., Yechiel Friedman, Joseph Friedman and Otto Park Jr., Plaintiffs,**

v.

**NEW YORK CITY DEPARTMENT OF HOUSING AND DEVELOPMENT ADMINISTRATION and the City of New York, Defendants.**

No. 85 Civ. 5128 (RLC).

United States District Court, S.D. New York.

June 8, 1988.

---

Abraham Friedman, et al., pro se.

Peter L. Zimroth, Corp. Counsel, New York City (Gabriel Taussig, Barry I. Berger, Isaac Salem, of counsel), for defendants.

## OPINION

ROBERT L. CARTER, District Judge:

This action is being prosecuted *pro se*[1] to redress alleged deprivations of civil rights in connection with the demolition on July 6, 1982, of two unsafe buildings in

---

1. Plaintiffs' attorney was permitted to withdraw on February 6, 1986. The court gave plaintiffs a month to secure new counsel, but plaintiffs have failed to do so.

2. While the ordinance speaks in the disjunctive, New York courts have interpreted it as requiring service upon *each* person known to the City

which plaintiffs claim an interest. Before the court are plaintiffs' motion to amend the complaint and defendants' motion for summary judgment.

## BACKGROUND

In February, 1981, the City of New York commenced unsafe building proceedings against 1261 and 1263 38th Street, Brooklyn, pursuant to Title 26, Article 8, of the Administrative Code of the City of New York ("Admin. Code"). Before such proceedings may be commenced, a notice containing specified information must be served upon each[2] person "who may have a vested or contingent interest in the structure or premises." Admin. Code, § 26–236(a). The notice is to be served personally, if the party to be served "can be found within the city after diligent search." *Id.*, § 26–236(b). If personal service cannot be made, the notice may be served by "posting it in a conspicuous place upon the premises ..., and also [mailing a copy] to such person at his or her last known place of residence." *Id.*, § 26–244(d).

The notice contains an order requiring the person served to make the subject premises "safe and secure," and further states that in the event of noncompliance, an engineers' survey will be made. If the survey shows that the building is indeed unsafe, the surveyors' report is placed before the State Supreme Court for trial of its allegations. The time and place of the trial are also set forth in the notice. If it is determined at trial that the building is unsafe, the court may issue a "Precept" ordering its demolition. *Id.*, § 26–239(d).

The buildings at 1261 and 1263 38th Street were ordered razed by Precepts rendered by default on February 19, 1981. The Precepts recite that notice was "duly served upon" plaintiff Y & J Enterprises,

---

who has such an interest. *Matter of City of New York (Unsafe Building & Structure, 30 West 119th St., Risko Realty Corp.)*, 176 N.Y.L.J. at 8, col. 3 (Sup.Ct.N.Y.Cty. July 22, 1976); *United Institutional Servicing Corp. v. City of New York*, 175 N.Y.L.J. at 9, col. 3 (Sup.Ct. Kings Cty. Feb. 24, 1976).

Inc., the record owner, and a number of other parties as mortgagees.[3] Salem Aff't, Ex. A. The remaining parties plaintiff to this action do not appear to have been served in their own names, although plaintiff Joseph Friedman was an officer of Y & J Enterprises, and plaintiffs Abraham and Yechiel Friedman are Joseph's father and brother, respectively.

On September 9, 1981, plaintiff Abraham Friedman brought on an Order to Show Cause in Supreme Court, Kings County, seeking an order vacating the Precepts on the grounds that he was a "user" of the buildings who had not been notified of the unsafe building proceedings, and that he had a meritorious defense. Justice Frank J. Pino of that court heard testimony on the motion on September 11 and 14, 1981, and denied relief from the bench. *Matter of Application of City of New York v. Unsafe Building and Structure No. 1261 and 1263 38th St.*, Index Nos. 3414/81 & 3415/81 (Sup.Ct. Kings Cty.). Justice Pino ruled that both Abraham Friedman and Y & J Enterprises had been "notified by certified mail," Hearing Transcript ("HT") at 150, and that the subject premises continued to be "dangerous." HT at 151. Judgment was entered on September 30, 1981, and reconsideration was denied.[4] The buildings were demolished between June 28 and July 6, 1982. Salem Aff't, ¶ 25. This action was commenced on July 3, 1985.

## DISCUSSION

### I. Motion to Amend the Complaint.

While defendants' motion for summary judgment was pending, plaintiffs sought to amend their complaint[5] to join six additional parties defendant and one party plaintiff, add a claim for punitive damages, and increase their *ad damnum* clause from

$250,000 to $35 million. The joinder of Agnes Friedman, the new party plaintiff, will not be permitted. The proposed amended complaint does not assert that she had any interest in the subject premises, and thus states no claim with respect to her. Leave to amend under Rule 15(a), F.R.Civ.P., is properly denied where the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Tri–State Judicial Services, Inc. v. Markowitz*, 624 F.Supp. 925, 929 (E.D.N.Y.1985); *Valdan Sportswear v. Montgomery Ward & Co.*, 591 F.Supp. 1188, 1190 (S.D.N.Y.1984) (Weinfeld, J.).

The attempt to join six new individuals as parties defendant would be unduly prejudicial to those individuals at this late date, *see Feldman v. Lifton*, 64 F.R.D. 539, 542 (S.D.N.Y.1974) (Carter, J.) (prejudice to non-parties sought to be joined may defeat right to amend), and indeed Rule 15(c), F.R.Civ.P., does not permit the proposed joinder. Rule 15(c) provides that no amendment changing the party against whom a claim is asserted will relate back to the date of the original pleading unless, within the applicable limitations period, "that party ... has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits...."

Plaintiffs have not offered in support of their proposed amendment any assertion that the parties sought to be added were made aware of "the institution of the action" within the period of limitation, nor could they do so. New York's three-year statute of limitations for general injuries to the person, N.Y.C.P.L.R. § 214(5), governs civil rights actions brought in this state

---

**3.** One of those listed as a mortgagee of 1263 38th Street is Otto Berk, Jr. Apparently this is the same person as plaintiff Otto Park, Jr. Plaintiff Park stipulated to the dismissal of this action on November 13, 1985, and is no longer a party.

**4.** Abraham Friedman appealed from Justice Pino's order, but his appeal was dismissed for failure to perfect. Salem Aff't, ¶ 27. Two additional Orders to Show Cause were brought sub-

sequently, in Supreme Court, New York County. The first, brought by Joseph Friedman, was denied due to the pendency of the appeal from Justice Pino's orders; the second, brought by Abraham Friedman, was not signed at all. Salem Aff't, Exs. J & L.

**5.** By Order dated March 11, 1988, the court deferred determination of the summary judgment motion until the matter of the proposed amendment had been resolved.

pursuant to 42 U.S.C. § 1983. *Okure v. Owens,* 816 F.2d 45, 48–49 (2d Cir.1987), *cert. granted,* —— U.S. ——, 108 S.Ct. 1218, 99 L.Ed.2d 419 (1988). The defendants were not served with the original summons and complaint until November 1, 1985, nearly four months past the expiration of the statutory period. Thus, not even those individuals now sought to be joined who are employed by the municipal defendants could have learned of the institution of this action by July 6, 1985, three years after the claim accrued.

■■■ Because punitive damages in actions under Section 1983 are available against neither municipalities, *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), nor municipal agencies, *e.g., Davis v. West Community Hospital,* 755 F.2d 455, 467 (5th Cir.1985) (municipal hospital); *see* 2 Cook & Sobieski, Civil Rights Actions, ¶ 4.08 n. 29 (1987 & Cumm.Supp.1987), the proposed amendment seeking such damages would be futile. It would be equally futile to amend the amount of damages claimed in the demand for relief from $250,000 to "five million dollars for each of the plaintiffs." Plaintiffs have articulated no basis upon which the amendment might be justified, *cf. Sadowy v. Sony Corp. of America,* 93 F.R.D. 450, 454 (S.D.N.Y. 1982) (Duffy, J.) (leave to amend granted to correct error in original damage calculation), and the court discerns in the proposed amendment only an unavailing attempt to subject defendants to punitive damages. In any event, since Rule 54(c), F.R.Civ.P., guarantees that final judgment will be entered for "the relief to which [a] party ... is entitled, even if the party has not demanded such relief in the party's pleadings," plaintiffs have no legitimate ground for concern on this score. *See* 6 Wright & Miller, Fed.Pract. & Proc.: Civil § 1474 (1971).

II.  Motion for Summary Judgment.

■■■ Defendants move for summary judgment on the ground that the validity of the Precepts is *res judicata,* and that the corporate plaintiffs may not proceed *pro se.* Relief on the latter ground is clearly appropriate. A corporation may not proceed before this court except by counsel. *Jones v. Niagara Frontier Transp. Authority,* 722 F.2d 20, 22 (2d Cir.1983). Upon granting the motion of plaintiffs' former attorney to be relieved, the court allowed plaintiffs thirty days to secure new counsel. More than two years have passed since the expiration of that period, and no appearance of counsel has been entered on plaintiffs' behalf. Fair warning was given, and the corporate plaintiffs' claims are now dismissed. *See Southwest Express Co., Inc. v. ICC,* 670 F.2d 53 (5th Cir.1982).

The claims of the individual plaintiffs are essentially two: first, that the Administrative Code is unconstitutional as applied to them, and second, that their property was taken without just compensation. In response to the first claim, defendants urge that the notice provisions in regard to unsafe buildings are constitutional on their face, and that relitigation of the factual issue of notice is precluded by a former adjudication in state court. Defendants do not address plaintiffs' second claim.

A.  Notice

■■■ The facial constitutionality of the method of service employed by section 26–236(a) of the Administrative Code is settled. *Sheiner v. City of New York,* 611 F.Supp. 172, 177 (E.D.N.Y.1985) (citing *Greene v. Lindsey,* 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982)). Plaintiffs' claim, however, is that that provision was not constitutionally applied to them. It is black-letter law that a method of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) ("means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it").

It appears from the record of the proceedings in state court that the relationship of the parties who object to the validity of

the notice provision to the buildings was not known to defendants. Yechiel Friedman claims to be a mortgagee, Abraham Friedman a tenant, and Joseph Friedman a tenant and an officer of the owner of record, Y & J Enterprises. Interested persons whose identity is neither of record nor discoverable by reasonably diligent search may not frustrate the vital policy favoring finality in the adjudication of claims by demanding the same quality of notice to which due process entitles known persons. "[I]n the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane*, 339 U.S. at 317, 70 S.Ct. at 658; *see also* Restatement (2d) of Judgments, § 2(3) and comment g (1982) ("When the identity or whereabouts of a person cannot be ascertained despite reasonably diligent inquiry, it is sufficient that the person is addressed by name or suitable identifying characteristics in notice that is suitably publicized").

■ Nonetheless, *Mullane*'s requirement that unknown parties have constructive notice is no dispensable formality; rather, it is an essential element of due process, without which a court has no jurisdiction to bind the absent parties. *See Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) (right to notice "fundamental"); Restatement (2d) Judgment §§ 1, 65 (1982) (judgment rendered without notice always subject to collateral attack). This is particularly so where, as here, the alleged interest of the unknown parties is more than "conjectural." *Cf. Mullane*, 339 U.S. at 317, 70 S.Ct. at 659; Restatement, *supra*, § 2(3), comment g (discussing interests of a person "remotely situated" with respect to the controversy). As notice by publication, the usual form of constructive notice, was not undertaken in this case, the court must consider whether the individual plaintiffs

were constructively notified in any other suitable manner. The close alignment among the interests of Y & J Enterprises and the individual plaintiffs compels the conclusion that the requisite "indirect," "suitably publicized" notice to the individual plaintiffs will be satisfied if notice to Y & J Enterprises was adequate.[6]

Defendants maintain, however, that the issue of the adequacy of notice to Y & J Enterprises has already been litigated to final judgment in a prior state-court proceeding. They point to Justice Pino's ruling in the hearing on plaintiff Abraham Friedman's Order to Show Cause:

Your claim is that you were never notified by the Building Department of any court action on this property.

Now, on all of this evidence I find that you [Abraham Friedman] were notified, that your corporation Y & J Enterprises, Inc. were [sic] notified, fully notified by certified mail. There are affidavits here [presumably those of defendants' process server] and I do not believe your testimony nor the testimony of your son [Joseph] that you were not notified.

Tr. at 150.

The full faith and credit statute, 28 U.S. C. § 1738, dictates that a federal court accord the same preclusive effect to a state-court judgment as that judgment would enjoy under the law of the state which rendered it. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). It has long been recognized that "a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee v. Duke*, 375

---

**6.** Plaintiff Joseph Friedman was an officer of Y & J, and the remaining individual plaintiffs are Joseph's father and brother. While the Precepts recite that other parties (denominated "mortgagees") were "duly served," there is no showing on the record before the court of a sufficiently close relationship between any of those parties and any of the individual plaintiffs to justify the same conclusion with respect to those parties.

U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186 (1963).[7]

To apply the full faith and credit statute, of course, the court must consult the rendering state's law of collateral estoppel. *Kremer*, 456 U.S. at 482, 102 S.Ct. at 1898. Under New York law,

> [t]here are now but two requirements which must be satisfied before the doctrine is invoked. First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination.

*Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 456, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985); *accord Gramatan Home Investors Corp. v. Lopez,* 46 N.Y.2d 481, 486, 414 N.Y.S.2d 308, 311, 386 N.E.2d 1328, 1331 (1979).

■ Justice Pino's ruling, albeit ambiguous,[8] is reasonably susceptible to one of two interpretations: he may have meant, on the one hand, that with respect to Abraham Friedman and Y & J Enterprises, the notice provisions of the Administrative Code were fully satisfied or, on the other, that, although they were not satisfied, actual notice resulted. For the purposes of the matter before him, the Justice could

easily have been indifferent as to the meaning given his words, for where notice is given pursuant to a constitutionally adequate statute, it is valid in either case. Restatement (2d) of Judgments, § 3, comment a (1982). In either case, plaintiffs are estopped from relitigating the issue of conformity with the Administrative Code's notice provisions. Nor have plaintiffs met their burden, *Kaufman,* 65 N.Y.2d at 456, 492 N.Y.S.2d at 588, 482 N.E.2d at 67; *Long Island Lighting Co. v. Transamerica Delaval, Inc.,* 646 F.Supp. 1442, 1448 (S.D.N.Y.1986) (Goettel, J.), of establishing the absence of a full and fair opportunity to litigate the issue before Justice Pino.[9] Because the validity of service on Y & J Enterprises, a corporation operated by the individual plaintiffs or their immediate family, is beyond question in this court, the individual plaintiffs cannot complain that they were denied the constructive notice which they were due.

**B. Just Compensation**

■ Plaintiffs' claim for just compensation for the destruction of the buildings is groundless and must be dismissed. *Mugler v. Kansas,* 123 U.S. 623, 668–69, 8 S.Ct. 273, 300–01, 31 L.Ed. 205 (1887) ("The exercise of the police power by the destruction of property which is itself a public

---

7. A claim arising under section 1983 is subject to the same treatment with respect to a former state adjudication as any other claim. *Allen v. McCurry,* 449 U.S. 90, 97–99, 101 S.Ct. 411, 416, 66 L.Ed.2d 308 (1980); *Migra,* 465 U.S. at 83–84, 104 S.Ct. at 897–98.

8. The Justice's ruling may have been not only ambiguous, but plainly erroneous. The evidence on the present motion shows (a) that Abraham Friedman was not served by any form of mail (indeed, he is listed on neither Precept as having been "duly served," and the Justice himself noted that, since Friedman's alleged tenancy was not of record, the City would be unlikely to give him notice (Tr. at 12)), and (b) that notice was sent to plaintiff Y & J Enterprises by regular, not certified, mail, and returned undelivered. Nonetheless, mere error in the rendering court is an insufficient ground upon which to disturb the finality of that court's valid judgment on the identical issue. *Underwriters Nat'l Assur. Co. v. North Carolina Life and Accident and Health Ins. Guar. Assoc.,* 455 U.S. 691, 714, 102 S.Ct. 1357, 1370, 71 L.Ed.2d 558 (1982).

9. While the issue of the constitutionality of the notice provision as applied to Y & J Enterprises was not previously litigated, the court concludes as a matter of law that no constitutional infirmity infected the service of notice on Y & J. The fact that defendants mailed notices to Y & J at the address of one of the allegedly unsafe buildings, and that those notices were returned undelivered, is not enough to bring this case within the scope of the Court of Appeals' holding in *Sterling v. Environmental Control Board of the City of New York,* 793 F.2d 52 (2d Cir.), *reh'g denied,* 795 F.2d 8 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986). The statute in issue in *Sterling* permitted service of notices of violation by conspicuous posting on the premises and subsequent mailing to the owner at the address of those same premises, but "did not require that a copy of the summons be mailed to the business address of the property owner." 793 F.2d at 57. The unsafe building provisions, by contrast, require that notice be mailed to the owner at its "last known place of residence." Admin.Code, § 26–244(d).

nuisance ... is very different from taking property for public use, or from depriving a person of his property without due process of law"); *Rochester Poster Advertising Co. v. City of Rochester*, 38 A.D.2d 679, 327 N.Y.S.2d 249, 250 (4th Dep't 1971) ("destruction of unsafe buildings ... was a proper exercise of [city's] police power").

Plaintiffs' ancillary claim for compensation based on the destruction of personal property which they stored in the buildings stands on a different footing. In demolishing the unsafe structures, defendants owed a duty to the owners of unoffending property to exercise reasonable care to avoid injury to that property. *Rochester Poster Advertising Co.*, 327 N.Y.S.2d at 250. Mere negligence, however, cannot give rise to a "deprivation" of property within the meaning of the due process clause. *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). The complaint does not allege that defendants knew that plaintiffs' personal property was stored in the buildings, much less that defendants acted intentionally or with reckless disregard of plaintiffs' property rights, and therefore states no claim under the fourteenth amendment or section 1983. The claim for compensation based on the destruction of personal property must also be dismissed.

### CONCLUSION

Plaintiffs are denied leave to amend their complaint. Defendants' motion for summary judgment is granted in full.

IT IS SO ORDERED.