**348**

Gerald GUTTERMAN, Mr. & Mrs. Benedict Cecere, Mr. & Mrs. Mark Moss, Russell Pugh Jr., and Francis McDonaugh, Plaintiffs,

v.

William EIMICKE, as Commissioner of the New York State Division of Housing and Community Renewal and Elaine Geliman, Charlotte Kurzberg, Robert Gecevich, Linda Murton, Abraham Nathan, Arlene Balter, Renee Lieberman, Rhoda Dornfest Wilkinson, Richard Raskin, Eunice Paseltiner, Lillian Blackman, Jerry Lewis, Jean P. Ahlemann, Joseph Sedacca, Barbara Spetalnick & Jay Ackerman, Lucille Kupcs, Richard & Carole Oberhaus, Elizabeth Rebando, Sheldon Pachtman and Jan Weinberg, Defendants.

No. CV 86–3077.

United States District Court, E.D. New York.

April 6, 1989.

Neil Sonnenfeldt, Gutman & Mintz, P.C., Richmond Hill, N.Y., for plaintiff.

Ellen Fried, Asst. Atty. for Robert Abrams, Atty. Gen., State of N.Y., Dept. of Law, New York City, for State-defendant.

Ronald J. Rosenberg, Garden City, N.Y., for other defendants.

## MEMORANDUM AND ORDER

DEARIE, District Judge.

Plaintiffs commenced this action claiming that they were denied due process because they were not personally notified of certain administrative proceedings before the New York State Division of Housing and Community Renewal ("DHCR"). For the reasons set forth below, this action is dismissed upon application by plaintiffs and sanctions are assessed pursuant to Fed.R. Civ.P. 11.

## BACKGROUND

### A. *Operative Facts*

In 1981, the apartment complex known as Glen Oaks Village was converted to a cooperative corporation. At the time the conversion plan became effective, over 1,300 of the units were occupied by rent stabilized tenants. The conversion plan provided that shares in the corporation allocated to these occupied units could be sold, subject to the rights of the tenants. Thus, a purchaser of shares allocated to an occupied apartment became a proprietary lessee with respect to the cooperative corporation and landlord of the rent stabilized tenant residing in the purchased unit.

Plaintiff Gutterman, general partner of S.B. Investors, sponsor of the conversion plan, owns the shares allocated to over 500 occupied apartments in Glen Oaks Village. The other plaintiffs are each shareholders of the shares allocated to a few of the other leased apartments.

The defendants are the rent stabilized tenants who reside in the apartments owned by plaintiffs (hereinafter the "tenant-defendants"). Also named as defendant is the Commissioner of the New York State Division of Housing and Community Renewal ("DHCR") (hereinafter the "state-defendant"). The DHCR is the state administrative body which administers the Rent Stabilization Law and adjudicates certain landlord-tenant disputes. Tenants may file complaints with the DHCR regarding repairs, maintenance and services, and the DHCR is empowered to conduct investigations, administrative hearings, inspections and ultimately may issue orders for rent rollbacks if certain services are not provided and may order that repairs, maintenance or other services be provided.

New York law requires that owners, such as plaintiffs, of rent stabilized apartments register certain information with the DHCR. An owner has the choice either to register his own name and mailing address or to designate an agent and provide only the agent's name and address.

The plaintiffs listed Grenadier Realty Corp. (hereinafter "Grenadier") as their agent on the registration forms filed with the DHCR. Grenadier also served as managing agent of the plaintiffs in connection with plaintiffs' dealings with their tenants. For example, plaintiffs arranged that rent checks be payable to Grenadier, that Grenadier execute renewal leases on behalf of the plaintiffs, and that the tenants deal only with Grenadier regarding maintenance of their apartments and other services.

Between 1983 and 1986, the tenant-defendants filed complaints with the DHCR, seeking rent reduction because of the alleged failure of the plaintiffs to make needed repairs to several units and certain common areas of the cooperative. In each case, Grenadier was notified by mail of the

**350**

complaint and scheduled hearing. In some of the cases, the DHCR issued orders reducing the rent payable by the tenant-defendants, and after Grenadier undertook to perform some of the required repairs, the DHCR scheduled hearings to consider Grenadier's requests for rent restoration. Hearings were also held to consider whether to impose sanctions for the failure to make certain other repairs.

Plaintiffs' due process claim in the instant case is premised on the fact that only Grenadier—and not any individual plaintiff —was served with notice of proceedings before the DHCR; the plaintiffs claim that they are the actual parties in interest in DHCR proceedings involving tenant complaints, and so they should have been served with papers instead of Grenadier. Specifically, plaintiffs attack 9 New York Code of Rules and Regulations § 2507.3 (hereinafter "NYCRR"), which provides that the DHCR is to notify by mail all persons "affected by" the filing of a complaint with that agency. Their attack on section 2507.3 is two-fold. First, plaintiffs argue that the regulation requires service of notice upon each individual proprietary lessee, and that therefore the DHCR did not follow its own regulation. Second, plaintiffs argue that if the regulation be read as permitting service to only the agent Grenadier, then it is unconstitutional on its face. In addition, plaintiffs challenge the constitutionality, as applied to them, of 9 NYCRR § 2506.2,[1] which authorizes, *inter alia*, the imposition of sanctions, including civil contempt, by the DHCR against certain landlords who fail to make necessary repairs. Lastly, plaintiffs challenge notice by mail, arguing that the only constitutionally acceptable mode of service is hand delivery.

On the very day this action was commenced, plaintiff Gutterman also filed suit in state court against the tenant-defendants alleging malicious prosecution and harassment in connection with the proceed-ings initiated by the tenant-defendants before the DHCR.

### B. *Procedural History*

In September 1986, plaintiffs filed their complaint in this action and moved this Court for a preliminary injunction to enjoin the contempt proceedings to be held before the DHCR. Before answering, counsel for the state-defendant telephoned counsel for the plaintiffs to request a voluntary withdrawal of the action in light of her belief that it was frivolous. Plaintiffs decided to proceed, however, and at the close of argument (on the preliminary injunction) on October 31, 1986, it was again suggested to plaintiffs that they consider withdrawing their action. On this occasion, the suggestion came from this Court, which expressed considerable skepticism about the viability of plaintiffs' claims, particularly as against the tenant-defendants. The Court instructed plaintiffs to reconsider whether to proceed and to inform the Court of their decision within thirty days. Plaintiffs' motion for preliminary injunction was denied, and defendants' cross-motion to dismiss and for attorneys' fees, sanctions and costs was held in abeyance pending plaintiffs' consideration of whether to withdraw the action.

On November 18, 1986, plaintiffs indicated by letter to the Court that they intended to proceed. The case was then referred to Magistrate Caden, before whom a conference was scheduled for December 22, 1986. During the conference, Magistrate Caden advised plaintiffs' counsel that if plaintiffs voluntarily discontinued their action within sixty days of the conference, he would recommend to this Court that no attorneys' fees or costs be assessed.

Shortly thereafter, on January 6, 1987, the defendants objected to the Magistrate's proposal, and on the following day the tenant-defendants filed a motion for summary judgment. The defendants again sought attorneys' fees, costs and Rule 11 sanc-

---

1. Plaintiffs' complaint as well as subsequent papers regularly refer to 9 NYCRR § 2602, not section 2506.2. It is clear, however, that section 2506.2 is the regulation the plaintiffs intended to challenge, since § 2506.2 is the enforcement provision (which authorizes the DHCR to sanction landlords who fail to make necessary repairs), whereas 9 NYCRR Part 2600 addresses neighborhood preservation.

tions. Defendants assert that the drafting of the summary judgment motion was largely completed by the time of the conference, that this fact was stated to Magistrate Caden at the conference, and that Magistrate Caden advised defendants to file the motion if they so desired.

One week later, by letter dated January 13, 1987, plaintiffs submitted to this Court and to Magistrate Caden their request to discontinue this action. Plaintiffs' letter stated:

> ... pursuant to our conference on December 22, 1986, the plaintiffs ... hereby respectfully request permission to discontinue (this action) without sanctions, costs or attorneys fees.

Plaintiffs' letter also requested that defendants' motion for summary judgment be dismissed as moot in light of the application for discontinuance, or in the alternative, that plaintiffs be granted an opportunity to respond to the motion if the Court denied the application to discontinue.

In response to this letter, Magistrate Caden issued a Report and Recommendation (the "Recommendation") in which he stated,

> By letter ... plaintiffs' counsel advised me that their clients agreed to voluntarily discontinue this action.
>
> Accordingly, I recommend that your Honor deny defendants' applications for sanctions, costs and attorneys fees.

The issue of the appropriateness of Rule 11 sanctions was then hotly debated by the parties: both the state-defendant and the tenant-defendants filed objections to the Recommendation, plaintiffs submitted responses to both sets of objections, and the state-defendant replied to plaintiffs' response.

## DISCUSSION

### A. *Dismissal Under Fed.R.Civ.P. 41*

■ Plaintiffs' letter of January 13, 1987 is appropriately treated as a request for voluntary dismissal despite counsel's apparently qualified request for "permission to discontinue ... *without sanctions*" (emphasis added). The request must be construed in light of the conference held be-

fore the magistrate on December 22, 1986. According to the Recommendation, Magistrate Caden advised plaintiffs that *if* they agreed to discontinue the action, then he would *recommend* to this Court that no sanctions be imposed. With plaintiffs' request for discontinuance, Magistrate Caden returned the case to this Court with his recommendation that sanctions not be imposed. Accordingly, plaintiffs' letter of January 13, 1987 shall be treated as a request for dismissal which this Court has the power to approve, pursuant to Fed.R. Civ.P. 41(a)(2), on terms and conditions that are just and proper.

■ Since this action should never have been commenced, this Court approves plaintiffs' request for dismissal, but concludes for the reasons stated below that sanctions are required. It should be noted that unlike a voluntary dismissal under Rule 41(a)(1)(i) or a stipulated dismissal under Rule 41(a)(1)(ii), approval of dismissal under Rule 41(a)(2) does nothing to diminish this Court's jurisdiction to impose Rule 11 sanctions. *See Barr Laboratories, Inc. v. Abbott Laboratories,* 867 F.2d 743, 747–748 (2d Cir.1989).

### B. *Defendants' Motions*

■ One preliminary matter should be addressed. Lest there be any doubt, the Court's decision today does not address the state-defendant's motion to dismiss or the tenant-defendants' motion for summary judgment in which sanctions were requested; those motions become moot by virtue of the Court's decision to approve voluntary dismissal under Rule 41. Therefore, it is immaterial that plaintiffs have not formally responded to the summary judgment motion (or to that part of it requesting sanctions). Plaintiffs have had their day in court on this issue. The question of sanctions has been before this Court since the outset of this action, having been expressly argued by the defendants in their opposition to plaintiffs' request for a preliminary injunction. Moreover, plaintiffs in effect briefed the issue in their detailed response to defendants' objections to the magistrate's Recommendation.

352

## C. *Rule 11*

Rule 11, as amended in 1983, provides that on all pleadings and motions,

> [t]he signature of an attorney or party constitutes a certificate by the signer that ... to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11. The rule provides that sanctions "shall" be imposed when a violation occurs. *Id.*

■ The Second Circuit interpreted amended Rule 11 in *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985), *cert. denied*, —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). *Eastway* held that the new language "formed after a reasonable inquiry" replaced the subjective standard of the pre–1983 rule with an objective test. *Id.* at 253. Under *Eastway*'s objective test, Rule 11 is violated when

> after reasonable inquiry, a competent attorney would not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Id.* at 254. As a result of the amendment, an attorney's subjective "good faith" belief in the viability of his or her claim no longer provides a "safe harbor" from sanctions. *Id.* at 253.

The Second Circuit has reaffirmed the principles announced in *Eastway* in its recent Rule 11 decisions. *See, e.g., Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1469–1471 (2d Cir.1988); *Motown Productions, Inc. v. Cacomm, Inc.*, 849 F.2d 781, 784–786 (2d Cir.1988); *City of*

*Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 49–50 (2d Cir.1988).

Under *Eastway*'s objective standard, the issue to be decided is whether plaintiffs' claim is so sufficiently meritless that no competent attorney could reasonably have concluded, after reasonable inquiry, that the claim was well grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

As a general matter, of course, application of Rule 11 under *Eastway* can pose difficulties. As our Court of Appeals has observed since *Eastway*,

> [t]he standards we have set forth for assessing whether Rule 11 has been violated are stated in general terms and are not always easily applied. While we would all agree that not every losing argument warrants the imposition of sanctions, the point at which an argument turns from merely "losing" to losing *and* sanctionable is often difficult to discern.

*Motown Productions*, 849 F.2d at 785 (emphasis in original).

*Eastway* itself offers some assistance,[2] but no easy answers. Application of the necessarily general proscriptions of Rule 11 to a virtually infinite variety of circumstances is routinely troubling and often quite difficult.

At the same time, however, *Eastway* recognized that the amendments to Rule 11 contemplate a more aggressive use of the rule by district courts. *See Eastway*, 762 F.2d at 253 (Rule 11's amendments were " 'intended to reduce the reluctance of courts to impose sanctions ... *by emphasizing the responsibilities of the attorney.*' ") (citing Notes of the Advisory Committee on the Rules, emphasis added by *Eastway* Court). The amendments emphasize in particular an attorney's "affirmative duty to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Id.*

---

2. In *Eastway* the Court ruled that Rule 11 had been violated because it was *"patently clear"* that the plaintiffs claims under 42 U.S.C. § 1983 and the federal antitrust laws had *"absolutely no*

*chance* of success" under the existing precedents. *Eastway*, 762 F.2d at 254 (emphasis added).

By the same token, however, the Court approaches the Rule 11 issue cautiously, mindful of the sensible fear that inappropriate use of Rule 11 sanctions can "stifle ... enthusiasm" or "chill ... creativity." *Eastway,* 762 F.2d at 254. The Court fully appreciates, therefore, the need "to avoid the wisdom of hindsight in determining whether a pleading was valid when signed," and its duty to resolve "any and all doubts ... in favor of the signer." *Id.*

In this case, with these concerns firmly in mind, the Court concludes without difficulty that sanctions must be imposed. By any objective analysis, it "is patently clear" that plaintiffs had "absolutely no chance of success under the existing precedents" and that "no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Eastway,* 762 F.2d at 254. It is clear to this Court that any responsible attorney making a reasonable inquiry would have discovered that there simply exists no support for the proposition that the only constitutionally acceptable mode of serving notice is hand delivery. *See, e.g. Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (Due Process requires "notice *reasonably calculated under all the circumstances* to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.") To the contrary, the Supreme Court has repeatedly held that notice by mail is constitutionally sufficient. *Id. See also Weigner v. City of New York,* 852 F.2d 646 (2d Cir.1988).

Second, plaintiffs' claim that the DHCR did not follow its own regulations is contradicted by a plain reading of the relevant regulations. Section 2500.2(g) of 9 NYCRR defines "landlord" to include a proprietary lessee *or his agent;* therefore, section 2507.3's requirement that "affected parties" be notified of landlord-tenant proceedings before the DHCR was fulfilled by sending notice to Grenadier, the plaintiffs' chosen registered agent.

Finally, the claim that the Constitution requires in this case notice to each proprietary lessee instead of to its designated agent, Grenadier, is obviously meritless as a matter of fact. Although Grenadier's designation as agent did not expressly include the receipt of process, *cf.* Fed.R. Civ.P. 4(d), it is fair to assume that receipt of service was within the duties of Grenadier as contemplated by both the State, when requiring either a landlord's or agent's address to be on file with the DHCR, and by the plaintiffs, when choosing to register only the name and address of an agent. This assumption is particularly warranted with respect to the plaintiffs because first, Grenadier was not a merely nominal agent but acted on behalf of the plaintiffs and in their stead *in every matter pertaining to the tenants;* and second, Grenadier *received actual notice* and *actually appeared* for plaintiffs at the DHCR proceedings. In short, the inference is inescapable that plaintiffs themselves recived notice of the hearings. Since plaintiffs' alleged due process violation so plainly flies in the face of the facts, there can be no question that Rule 11 sanctions are in order.

Plaintiffs' apparent love affair with *Sterling v. Environmental Control Board of the City of New York,* 793 F.2d 52 (2d Cir.1986) is entirely contrived. Since the commencement of this action, plaintiffs' counsel has argued that *Sterling* supports plaintiffs' due process claims. Counsel's reliance on the case was curiously exclusive and unrelenting: a copy of the opinion was attached to the complaint when filed, and not a single other decision was ever submitted in support of the due process claim. Despite the fact that this Court advised plaintiffs' counsel early in this action that his clients' claims were unsupportable, and despite the patent absence of anything in the *Sterling* opinion to advance plaintiffs' case, plaintiffs' counsel has stubbornly clung to the view that *Sterling* supports plaintiffs' claims: he took this view into the final conference before Magistrate Caden and despite any change of heart that might have occured at the conference, has argued to this Court, subsequent to the conference, that it was not unreasonable to rely on *Sterling.*

354

*Sterling*, however, as any responsible attorney could discern after reasonable inquiry, is plainly inapposite to plaintiffs' claims in this action. *Sterling* held that a New York statute authorizing a "nail and mail" notice scheme for the issuance of summonses by the New York City Environmental Control Board ("ECB") for sanitation code violations was unconstitutional *as applied* to absentee landlords. Regarding "mailed" notice as "wholly unreliable with regard to absentee landlords," the *Sterling* Court found that the "mailing" was also constitutionally deficient because the ECB mailed summonses to the same address where the citations were issued (and where the first summons was "nailed") in an envelope bearing the notation "Agent." A great number of the mailed notices in fact did not reach the landlords and were often returned to the ECB as undeliverable; the ECB nonetheless entered default judgments against many of the landlords who never received notice.

Even affording plaintiffs' counsel the benefit of every reasonable doubt, it was clearly not reasonable—by any objective measure—for counsel to rely so stubbornly on *Sterling*. The case lends absolutely no support to either of the general legal propositions essential to plaintiffs' claims—that a regulation providing for service to an "agent" is *on its face* unconstitutional, nor that that service by mail as a general matter is constitutionally defective.

Factually, the irrelevance of *Sterling* to this case is even more apparent.[3] Indeed, the "nail and mail" scheme under attack in *Sterling* is so unlike the notice scheme plaintiffs attack in the instant action that one wonders what plaintiffs' counsel could have been thinking when he cited *Sterling*. For example, in *Sterling* (i) the absentee landlords never designated any agent, for

any purposes; (ii) the landlords often never received notice; and (iii) many default judgments were entered against many of the landlords. In this case, by contrast, (i) the proprietary lessees designated Grenadier as their agent, (ii) Grenadier (and presumably plaintiffs) received actual notice in every case, and (iii) Grenadier, on plaintiffs' behalf, actually appeared at the very proceedings the notice of which plaintiffs challenge. It appears that the only thought plaintiffs had with respect to *Sterling* was that it was a "notice" case involving absentee landlords.[4]

Counsel asserts that he was finally able to appreciate the inapplicability of *Sterling* when the case was explained to him by Magistrate Caden, who had been personally involved in the *Sterling* litigation. Counsel would like this Court to believe that because of his personal involvement in the case, Magistrate Caden supplied counsel with unique, theretofore undiscernible legal insights into *Sterling*. It could not, however, have taken anyone as long as counsel would have this Court believe it took him to see the light. To the contrary, it is more likely that upon learning of Magistrate Caden's personal participation in *Sterling*, counsel realized the futility of continuing his sham "reliance" on the opinion.

In the final analysis, then, this case is not about creativity, or well-intended but misguided advocacy. The feigned allegiance to *Sterling* and the simultaneous filing of another case against the tenants in state court are just two of the more obvious indicators of the improper purpose for which this lawsuit was commenced: to harass the rent stabilized tenants presumably in order (i) to encourage them to vacate their units, (ii) to offset any rent reductions the tenant-defendants secured from the DHCR by forcing them to incur substantial

---

3. Comparison of the facts is especially relevant, given that analysis of notice for constitutional purposes is fact- and circumstance-specific. *See Mullane*, 339 U.S. at 314.

4. It is quite remarkable that when trying to display the merits of their claims for the purpose of avoiding Rule 11 sanctions, plaintiffs argue

In *Sterling*, notice mailed to apartments of absentee landlords, followed by ordinary mail was held constitutionally deficient. Plaintiffs argued that the failure of DHCR to mail complaints to the plaintiffs was likewise deficient. Plaintiffs' Response, par. 5. This is such a non-sequitur that the Court is truly unsure what plaintiffs' counsel actually believed about *Sterling*.

litigation costs, or (iii) simply to deter the filing of future complaints with the DHCR. Plaintiffs undoubtedly invoked "due process" to gain admittance to federal court, so that the tenant-defendants would have to defend themselves on *two* different fronts in battles launched simultaneously.

Plaintiffs' strategy is obvious given their decision to name the tenant-defendants in the federal action. With or without a reasonable inquiry, one cannot even articulate a basis for instituting suit against the tenant-defendants when seeking relief from an allegedly unconstitutional state regulation. Plaintiffs' regrettable ploy was entirely ill-motivated and utterly vexatious. Sanctions must be imposed.

As to the amount of sanctions, there exists the issue of whether the plaintiffs' failure to withdraw the suit at an earlier date should be considered an aggravating factor. While it is true that a party's refusal to withdraw after being expressly asked to do so by both opposing counsel and the Court has been held to be itself a violation of Rule 11, *see Otis Elevator v. Yonkers*, 844 F.2d at 48–49, in this case the Court is not inclined to increase an otherwise appropriate sanction. Nor would it be fair to ignore the fact that plaintiffs, ultimately, withdrew their action. It is sufficient in this case that the tenant-defendants be reimbursed for the costs they incurred in defending this abusive litigation. Accordingly, plaintiffs' counsel is directed to pay to the tenant-defendants their reasonable attorneys' fees of $12,555.00.

In deciding on an appropriate sanction, the Court is aware that the State too has incurred costs in defending this action and that logic and fairness strongly suggest that the Court consider requiring plaintiffs' counsel to reimburse the State. Logic also suggests that plaintiffs themselves share with their counsel the burden of the sanctions imposed. As sophisticated business people, plaintiffs undoubtedly played a role in formulating the litigation strategy and should be held accountable.

Nevertheless the Court has concluded that the sanction selected is appropriate in form and amount. This sanction will reme-dy a manifest hardship sustained by the tenant-defendants and, most importantly, will remind counsel that a failure to satisfy Rule 11 obligations will not be ignored.

The Clerk of the Court is directed to enter judgment consistent with this opinion.

SO ORDERED.