OPINION OF THE COURT
William P. McCooe, J.
Plaintiff loft landlords move and defendants cross-move for summary judgment (CPLR 3212) in a declaratory judgment action (CPLR 3001) challenging Multiple Dwelling Law article 7-C (Loft Law) and the regulations promulgated thereunder upon the ground that they are unconstitutional on their face and as applied to them.
The Loft Law was enacted as a comprehensive plan based upon a legislative finding of a serious public emergency created by the conversion of commercial and manufacturing loft buildings to residential use without compliance with local law; that there is an “acute shortage of housing”; that the courts have been burdened with disputes between the landlords and tenants over their respective rights and that legislation is necessary to insure minimum standards for health, safety and fire protection.
Loft premises were being illegally occupied for residential purposes under commercial leases with the knowledge of the landlords and many tenants had made substantial improvements to the space to make it suitable for residential occupancy. This law gave the tenants status as rent-stabilized tenants and the landlords the right to collect rent and commence summary proceedings in the absence of the previously required certificate of occupancy while the property was being brought into compliance with the residential building code.
The Loft Law provides for the creation of a Loft Board which is mandated to promulgate rules and regulations to implement the statutory requirements for loft conversions. The landlord is required to perform the work necessary to bring the building up to residential code compliance and is entitled to rent adjustments, one based upon the cost of compliance with health and safety standards and a second based upon the procurement of a residential certificate of occupancy. The Loft Board is required to promulgate a schedule of renovating costs necessarily and reasonably incurred by the landlord, including financing costs, and permits those costs to be passed along to the tenant over either a 10- or 15-year period. A landlord may apply to the Loft Board for a “hardship” exemption of the building on the ground *1092 that the cost of compliance renders legal residential conversion financially “infeasible” based upon the absence of a projected “reasonable” return of 5% or where conversion would adversely affect another nonresidential tenant.
A tenant is entitled to sell any improvements made in the unit upon vacating the premises to an incoming tenant with the landlord having the right of first refusal. The Loft Board is required to promulgate rules and regulations regarding such sale. A purchase by the landlord may make the subsequent leases at free market rents depending upon the number of units and unless the building is subject to rent regulation by virtue of some other statutory provision.
On December 21, 1982, the Loft Board issued interim rent guidelines applicable where leases had expired. The guidelines permit consideration of escalation clauses, including but not limited to real estate taxes, heating fuel, labor, water and sewer, insurance, vault tax and any cost-of-living increase formulas, but excluding gas, electricity and steam charges. Landlords were given increases of (a) 7% where the last increase was subsequent to December 31, 1979, (b) 22% where the last increase was between 1977 and 1979 and (c) 33% when the last increase was prior to January 1977. Additional surcharges of 2, 4 and 6%, respectively, for categories a, b and c above are permitted where the most recent lease did not contain an escalator provision.
Plaintiffs’ claim of unconstitutionality is primarily based on the economic impact of the legislation on their property. They contend that this law imposes a duty on them to legalize commercial property for residential purposes at great personal expense against their will without any guarantee that they will be able to secure adequate financing for such renovation or that the rentals fixed by the Rent Guidelines Board will not adequately compensate them for their investment or guarantee that the tenants will remain in possession of the premises after their investment is made. They further contend that this legislation authorizes unreasonably low rents which deprives them of a meaningful return, places a restriction on the use they make of their property and that the retroactive nature and effect of the law is legally impermissible. Finally, they contend that the power to determine the “necessary and reasonable” cost of legalization which may be passed on to the tenants is an impermissible delegation of legislative power to the Board and in any event the Board has failed to promulgate regulations which define and determine such costs.
*1093 The administrative deficiencies claimed are the failure to secure outside financing for the conversions, the failure to process any hardship applications and the failure to promulgate the rules and regulations mandated by the act.
They contend that article 7-C constitutes an impairment of contracts under US Constitution, article I, § 10, constitutes a taking of private property without just compensation under US Constitution 5th and 14th Amendments and NY Constitution, article I, § 7 and violates the due process and equal protection clauses under US Constitution 14th Amendment and NY Constitution, article I, § 6.
The judicial branch of government has a defined role in reviewing the actions of the legislative branch of government. Its role is limited by the “simple, but well-founded, presumption that an act of the Legislature is constitutional and this presumption can be upset only by proof persuasive beyond a reasonable doubt”. (Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358, 370; Cook v City of Binghamton, 48 NY2d 323.) The legislative findings that motivated the enactment of the statute indicate its legitimate concern with health, safety and reasonable rentals for both landlords and tenants and a court should not substitute its judgment as to solutions and remedies where the legislation is reasonably related to the condition. (I.L.F.Y. Co. v City Rent & Rehabilitation Admin., 11 NY2d 480, 489.) The test is whether the means adopted by the Legislature to carry out its avowed purposes was reasonable under the circumstances and not whether it was the “wisest” course of action. (Nebbia v New York, 291 US 502.) This law is a valid exercise of the State’s police power and does not offend either US Constitution 14th Amendment or NY Constitution, article IX, § 2 (b) (2) (Lipkis v Pikus, 122 Misc 2d 136,145, affd 122 Misc 2d 833, revd on other grounds 103 AD2d 682; Goldblatt v Town of Hempstead, 369 US 590; I.L.F.Y. Co. v City Rent & Rehabilitation Admin., supra, at p 489).
The exercise of the State police power may properly place restrictions on the use or return on property if it is reasonably related to a legitimate public purpose. (Matter of Golden v Planning Bd., 30 NY2d 359, 381, appeal dismissed 409 US 1003; Matter of Society for Ethical Culture v Spatt, 68 AD2d 112, affd 51 NY2d 449.) A taking in the constitutional sense only occurs when the owner is deprived of any use of the property for which it is reasonably adapted, rather than merely restricting its use or depreciating its value. (Spears v Berle, 48 NY2d 254, 263; French Investing Co. v City of New York, 39 NY2d 587, 596, *1094 appeal dismissed 429 US 990.) Matter of Seidner v Town of lslip (56 NY2d 1004) and Jensen v City of New York (42 NY2d 1079) are readily distinguishable since the plaintiffs were deprived of “all” use of the property. A proper exercise of the police power is not invalidated by its imposition of financial burdens upon the affected parties. (Day-Brite Light, v Missouri, 342 US 421, 424; Levitt v Incorporated Vil. of Sands Point, 6 NY2d 269, 273.) There is no constitutional right to any particular rate of return on property. (Bucho Holding Co. v Temporary State Hous. Rent Commn., 11 NY2d 469.) A 6% return was sustained in Felner v Office of Rent Control (27 NY2d 692).
The Loft Law attempts to strike a balance between the financial interests of loft owners and tenants by regulating both the rent levels prior to the owner’s compliance with occupancy standards and providing for “pass through” from owner to tenant of the costs reasonable and necessary incurred by the owner in achieving compliance. The precompliance rentals leave existing leases undisturbed and provide for varying rent increases on renewal leases upon building registration as well as rent escalation for utility charges. The Loft Law deals with compliance costs by providing those costs “necessarily and reasonably incurred” by owners will be passed along to tenants. This statutory language provides a sufficient standard so as to validate the delegation of legislative discretionary power to an administrative agency. (Matter of 241 E. 22nd St. Corp. v City Rent Agency, 33 NY2d 134, 143.)
Plaintiffs contend that the Loft Law denies them equal protection under the US and State Constitutions. A law that treats citizens differently than others is violative of the equal protection clause only if the classification rests on grounds wholly irrelevant to the legislative purpose and it will not be set aside if any state of facts can reasonably justify it. (McGowan v Maryland, 366 US 420, 425.) The present legislative classification is reasonably related to several legitimate public purposes and passes constitutional muster. The classification is neither “wholly irrelevant” (McGowan v Maryland, supra, p 425) nor “patently arbitrary” (Frontiero v Richardson, 411 US 677, 683) but instead distinguishes commercial buildings with loft tenants from others because the loft occupancy has endangered public health and safety and has created chaotic and unsettled legal problems.
Plaintiffs further contend that the Loft Law constitutes an impairment of contractual obligations under US Constitution, article I, § 10 with respect to the existing leases with plaintiffs’ *1095 tenants. Assuming such fact to be true, the Loft Law is a valid exercise of the police power under a declared housing emergency and is constitutional since it serves an important purpose for the general welfare. (Matter of Freeport Randall Co. v Herman, 83 AD2d 812, 813.)
This court has previously passed on the retroactive nature of the challenged law and has found it legally permissible for the reasons stated therein. (465 Greenwich St. Assoc. v Schmidt, 116 Misc 2d 62; Lipkis v Pikus, supra.)
The court finds that the Loft Law is facially constitutional for the reasons stated.
The second branch of the motion is directed towards the alleged unconstitutionality of article 7-C as administratively applied to plaintiffs. An article 78 is the proper vehicle to determine whether the statute and regulations are being unconstitutionally applied but an improper form for the relief sought is correctible and the court will consider the arguments advanced. (Matter of Kovarsky v Housing & Dev. Admin., 31 NY2d 184, 192.)
The thrust of plaintiffs’ arguments is that the Board has failed to act on any hardship applications or to promulgate regulations such as defining “necessary and reasonable” costs of legalization and the “buy out” provisions as required under the act. The plaintiffs are aggrieved parties and are entitled to relief. The act specifically directs the performance of these acts which the defendants have failed to do. The defendant is directed to comply with article 7-C by promulgating schedules mandated by the act and to commence holding hardship hearings within 120 days of the date of the settlement of this order. The act specifically directs the Board to promulgate regulations and to hold hardship hearings. These provisions are mandatory and not directory since they are essential to the implementation of the act and should be strictly construed (McKinney’s Cons Laws of NY, Book 1, Statutes § 171) including time for performance. Mandamus may be used to compel performance of an act required to be done by provision of law (Matter of Sullivan v Siebert, 70 AD2d 975; Matter of Silk & Bunks v Greenfield, 102 AD2d 734) and where “the act sought to be compelled is ministerial, nondiscretionary and nonjudgmental, and is premised upon specific statutory authority mandating performance in a specified manner” (Matter of Peirez v Caso, 72 AD2d 797) and where there is an inordinate delay in acting. (Matter of Stuart & Stuart v New York State Liq. Auth., 29 AD2d 176.)
*1096 There is an inordinate delay in acting in the instant case. The law is almost three years old and there is no legitimate reason given for the failure to promulgate the regulations. A reasonable time to act is presumed when there is no specific time given. Three years is not reasonable and any delay in appointing the Loft Board is no legal justification for the delay.
Plaintiffs further claim that they may not be able to obtain financing or keep the premises rented. These arguments are not cognizable since they are merely speculative, conjectural and premature. (Prashker v United States Guar. Co., 1 NY2d 584.) Furthermore, these issues are factually disputed by defendant which precludes summary judgment.
Plaintiffs’ motion for summary judgment declaring article 7-C unconstitutional is denied. Defendant’s cross motion for summary judgment declaring article 7-C constitutional is granted.
Defendant is directed to promulgate regulations mandated by the Loft Law and schedule hardship hearings within 120 days from the date of settlement of this order. The proposed orders shall list precisely which mandated regulations have not been promulgated to date.