### 640 BROADWAY RENAISSANCE CO., Plaintiff,

v.

### Mario CUOMO, as Governor of the State of New York, et al., Defendants.

### No. 88 Civ. 6288(JMW).

United States District Court, S.D. New York.

June 12, 1989.

As Amended July 24, 1989.

Kenneth G. Schwarz, Fishbein & Badillo, New York City, for plaintiff.

David Ratner, Hartman, Ule, Rose & Ratner, New York City, for tenants-defendants.

Dennis J. Saffran, Asst. Atty. Gen., State of N.Y., Dept. of Law, Albert Fredericks, Asst. Corp. Counsel, Corp. Counsel of the City of New York (Catherine B. McAlevey, Corp. Counsel of the City of New York, New York City Loft Bd., of counsel), New York City, for governmental defendants.

## OPINION AND ORDER

WALKER, District Judge:

In this action, brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3), plaintiff asserts two groups of claims: (a) nine federal causes of action solely against individually named governmental defendants challenging the constitutionality of the "Loft Law" and; (b) thirty-six state claims for fraud and breach of contract against individually named tenant-defendants. The tenant-defendants have moved to dismiss the group (b) claims against them on the ground that these claims fail to state a cause of action under New York law and have moved for an order imposing Rule 11 sanctions. The Court agrees that the state law claims should be dismissed but for a different reason: lack of subject matter jurisdiction.

This Court, like all federal courts, has a "virtually unflagging obligation ... to exercise jurisdiction given to [it]." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). However, a federal court must first ensure that, in fact, it has jurisdiction. Federal subject matter jurisdiction may be raised at any time, and *must* by raised *sua sponte* by a federal court upon any indication that jurisdiction is lacking. *See, e.g., Hughes v. Patrolmen's Benevolent Association of the City of New York, Inc.*, 850 F.2d 876, 881 (2d Cir.1988); Fed.R.Civ.P. 12(h)(3).[1] For the reasons stated below, the Court dismisses plaintiff's state law claims for lack of subject matter jurisdiction.

### I. Background

This case concerns "640 Broadway," a loft building located in an area of Manhat-

---

1. The Attorney General first raised the question of subject matter jurisdiction at oral argument on May 9, 1989. Plaintiffs have since had an opportunity to respond in writing.

tan north of Houston Street known as "NOHO." The building was originally designated as a commercial building and residential use was forbidden under New York law. However, artists [2] began living in the building in the seventies. In fact, in 1978 the owner of the building was cited for violating zoning provisions by allowing the building to be used for residential use. Shortly thereafter, also in 1978, plaintiff 640 Broadway Renaissance Co. acquired the building.

The tenant-defendants contend that plaintiff knew that people were living in the building at the time plaintiff acquired it. Residents have testified that they informed plaintiff before they signed their leases that they planned to live in the building and that the owner gave assurances that such arrangements were acceptable. Still, all tenants signed commercial leases that explicitly stated that they would only use the building for commercial purposes and would not reside on the premises.

In June, 1982, in response to the illegal conversion of many New York City loft buildings to residential uses, the New York State Legislature enacted Article 7–C of the Multiple Dwelling Law (the "Loft Law"). The Law's purpose is to preserve residential housing and to effectuate legalization of loft units which had been previously converted from commercial to residential use without compliance with the New York City building codes and zoning resolutions. The Loft Law requires owners to bring affected buildings into compliance with previously-ignored building codes. An owner who might suffer unjustifiable hardship because of legalization costs was given an opportunity to gain an exemption from the Loft Law by filing a hardship provision with the New York City Loft Board within nine months of passage of the Law.

Article 7–C establishes a comprehensive framework for legalization of buildings used for residential purposes during a sixteen month period between 1980 and 1981. Continued occupancy of the residential units in these buildings is permitted, and the owners are required to make various improvements and obtain residential certificates of occupancy for the units in accordance with set timetables. § 283, § 284. Legalization costs are to be passed along to the tenant in the form of temporary rent adjustments. § 286[5]. During the legalization period, tenants are afforded basic protections available to residents of New York City. § 286[11]. After a landlord brings a unit into compliance with applicable housing standards, the landlord must offer tenants residential leases. § 286[3]. Landowners in compliance with the law are authorized to recover back rent or possession of a unit for non-payment of rent.[3] § 285[1].

Article 7–C also authorizes the establishment of a special governmental unit known as the Loft Board (the "Board"), to be made up of representatives of the public, the real estate industry, loft tenants and loft manufacturing interests. The Board is charged with the duty of enforcing Article 7–C. It is specifically authorized to determine issues of coverage under the laws and issue various regulations. § 282. By order dated April 28, 1988, the Board determined that 640 Broadway is an "interim dwelling unit" subject to the provisions of Article 7–C.

In September, 1988, plaintiff initiated the present action. Counts one through nine of the Complaint allege in substance the following constitutional violations: (1) that the Loft Law, in conjunction with other related laws, effects a taking of private property for public use without just compensation in violation of the Fifth and Fourteenth Amendments; (2) that in violation of Article I, Section 10 of the United States Constitution, the Loft Law causes

**2.** Plaintiff prefers to call them "so-called artists."

**3.** The parties dispute exactly what a landlord must do to be "in compliance" under § 285[1]. Plaintiff argues that the landlord would have to spend millions of dollars complying with a law that they believe to be unconstitutional in order to recover rent. Defendants argue the landlord need only register the building and provide minimal residential services, such as providing heat and hot water. This dispute is not presently before the Court.

substantial impairment of the obligation of contracts and constitutes an unlawful Bill of Attainer; (3) that in violation of the Fourteenth Amendment, the Loft Law deprives the owner of liberty and property without due process of law, and denies the owner equal protection of the law.

In Counts 10 through 45 of the Complaint, plaintiff asserts allegedly pendent state law claims of fraud and breach of contract against the residential tenants of the building. These claims purportedly arise out of tenants' residential use of 640 Broadway in contravention of their leases and their refusal to surrender possession of their units at the expiration of these leases. Plaintiff argues that "this Court can and should exercise its pendent jurisdiction over the state law claims because those claims are based upon the same operative facts as are the federal claims and because the exercise of pendent jurisdiction over the nonfederal claims will promote judicial economy, convenience and fairness to the parties." Complaint ¶ 16. It is this group of state law claims with which the Court is concerned here.

## II. Discussion

### A. *Subject Matter Jurisdiction*

■ The concept of "pendent jurisdiction" has its origin in *United Mineworkers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), in which the Supreme Court held that where there is federal jurisdiction over parties with both federal and nonfederal claims, a federal court has the constitutional power under Article II, Section 2 to adjudicate the non-federal portion of the dispute. Under this general doctrine, known as pendent-claim jurisdiction, a pendent non-federal claim is asserted against a defendant who is already subject to the jurisdiction of the federal court on a federal cause of action. In this case, however, there are no federal causes of action asserted against the tenant-defendants.[4] Thus, the only basis for exercising jurisdiction over the state claims is the doctrine of "pendent-party jurisdiction." *See general-*

ly 13B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction (2d ed.) § 3567.2 at 145–161. Under this theory, once a federal court has jurisdiction over a federal claim to which state claims may be appended, it may also assert jurisdiction over nondiverse parties against whom only the state claims are alleged.

■ The doctrine of pendent-party jurisdiction provides a much narrower basis for jurisdiction than the doctrine of pendent-claim jurisdiction recognized in *Gibbs*. As the Supreme Court explained in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), in contrasting the two doctrines:

> [I]t is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction ... [T]he addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress.

*Id.* at 14–15, 96 S.Ct. at 2420.

In *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the Supreme Court noted that pendent-party jurisdiction may not offend Article III when the statutory grant of subject matter jurisdiction does not explicitly or implicitly negate the exercise of such jurisdiction. *Id.* at 18, 96 S.Ct. at 2422. In other words, if the statutory scheme in which the grant of jurisdiction appears excludes a particular party, the court may not exercise pendent-party jurisdiction. *See e.g. Aldinger*, 427

---

**4.** Contrary to plaintiffs' assertions in submissions to this Court, the constitutional claims are only against the governmental defendants, not the tenant-defendants. The Court rejects plaintiffs' argument that the tenant-defendants can be characterized as state actors.

U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) (municipal corporations excluded from liability under 42 U.S.C. § 1983, therefore no pendent-party jurisdiction under 28 U.S.C. § 1343); [5] *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (no pendent-party jurisdiction under diversity grant, 28 U.S.C. § 1332(a)(1) for nondiverse parties). On the other hand, when Congress has neither expressly nor impliedly negated the exercise of jurisdiction, courts have at times been willing to exercise pendent-party jurisdiction. *See e.g., Bolton v. Gramlich*, 540 F.Supp. 822, 845–46 (S.D.N.Y.1982) (pendent-party jurisdiction permissible when main claim based upon Securities Exchange Act of 1934).

The Supreme Court recently made explicit the nontransferability of *Gibbs* to the context of pendent-party jurisdiction. In *Barbara Finley v. United States*, —— U.S. ——, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), the Court refused to allow pendent-party jurisdiction in Federal Tort Claims Act (FTCA) [6] cases. Writing for the majority, Justice Scalia reasoned that the text of the FTCA—which provides in pertinent part that the federal district courts shall have jurisdiction over "civil actions on claims against the United States"—defines jurisdiction in a manner that does not reach defendants other than the United States and thus precludes courts from exercising jurisdiction over private parties, even though claims against such parties arise from a common nucleus of operative facts and trying such claims together would promote judicial economy and efficiency.[7] Citing *Aldinger, Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), and *Owen Equipment*

& *Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), Justice Scalia observed, "Our cases show … that with respect to the addition of parties, as opposed to the addition of only claims, we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly." —— U.S. at ——, 109 S.Ct. at 2007. Justice Scalia concluded that all of these cases "have held that a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties." —— U.S. at ——, 109 S.Ct. at 2010.

Thus, in determining whether this Court has jurisdiction over the tenant-defendants, the Court must undertake a three-tiered analysis. First, it must determine whether it has the Article III power to exercise jurisdiction over the claims. *United States Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Second, it must determine whether Congress in the statutes conferring jurisdiction has not expressly or by implication negated the existence of jurisdiction. *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Barbara Finley*, —— U.S. at ——, 109 S.Ct. at 2007.[8] Third, it must decide whether as a matter of discretion the power to exercise jurisdiction should be exercised. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

### 1. Article III Considerations

Under either the doctrine of pendent-claim jurisdiction or the more limited doctrine of pendent-party jurisdiction, plaintiff first must satisfy two requirements to establish that the Court has Arti-

---

**5.** *Aldinger* preceded *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which held that municipal corporations are subject to § 1983 liability.

**6.** 28 U.S.C. § 1346(b).

**7.** The Supreme Court found the unavailability of jurisdiction over the additional state law claims to be unaltered by the exclusivity of federal jurisdiction under the FTCA, even though that may sometimes require separate

suits in state and federal court. —— U.S. at ——, 109 S.Ct. at 2009.

**8.** *See also Owen Equipment & Erection Co.*, 437 U.S. at 373, 98 S.Ct. at 2402 ("*Gibbs* does not end the inquiry into whether a federal court has power to hear the nonfederal claims along with the federal ones. Beyond the constitutional minimum, there must be examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim.")

cle III jurisdiction to hear the state claim: (1) the federal claim to which plaintiff seeks to pend the state claim must be substantial, and (2) the state claim must arise from "a common nucleus of operative fact" such that plaintiff "would ordinarily be expected to try them [both] in one judicial proceeding." *Gibbs* 383 U.S. at 725, 86 S.Ct. at 1138.

At the outset, the Court finds that plaintiff has set forth substantial federal claims. While New York state courts have considered and rejected some constitutional challenges to the Loft Law, *see Spring Realty Co. v. New York City Loft Board*, 127 Misc.2d 1090, 487 N.Y.S.2d 973 (Sup. Ct., N.Y.Co.1985), *aff'd*, 117 A.D.2d 1029, 498 N.Y.S.2d 241 (1st Dept.) *modf'd on other grounds*, 69 N.Y.2d 657, 511 N.Y. S.2d 830, 503 N.E.2d 1367 (1986); *app. dism'd*, 482 U.S. 911, 107 S.Ct. 3179, 96 L.Ed.2d 668 (1987), it appears that state courts have not considered all of plaintiff's constitutional arguments and, in any event, no federal court has ruled on the constitutionality of the Loft Law.

However, plaintiff has failed to satisfy the second requirement. The fraud and breach of contract claims against the tenant-defendants do not derive from a "common nucleus of operative fact" with plaintiff's federal claims against the governmental defendants. The federal claims concern the alleged unconstitutionality of the enactment of the Loft Law by the State in 1982, and its subsequent enforcement by the City. The state law claims concern a wide range of tenant actions at various times both before and after the enactment of the Loft Law. The Complaint is not clear as to the nexus between the state claims and the federal claims. Plaintiff suggests that the "obvious connection" is that "acting pursuant to an unconstitutional state law, the tenants have illegally wrested control of the building away from plaintiff." [9] Since this Court has rejected the notion that the tenant-defendants are

state actors, plaintiff's argument can be reduced to the following: the nexus between the claims is that the tenant-defendants could rely upon the Loft Law in defending themselves against the state law claims. However, this is not a "common nucleus of operative facts" within the meaning of *Gibbs* and its progeny. And use of federal claims as a potential *defense* does not confer federal question jurisdiction under 28 U.S.C. § 1331.

That both sets of claims somehow involve the Loft Law is not dispositive. There is only a minimal overlap of the factual circumstances behind the constitutional and state claims, and the claims are based upon entirely different legal theories. Under such circumstances, this Court should not exercise pendent-party jurisdiction. As Judge Sweet of this Court noted:

> Although it is not necessary for the exercise of pendent jurisdiction that there be complete identity of facts and issues with respect to the federal and state claims, courts have frequently declined to assume jurisdiction where the claims are based upon different factual and legal elements.... Even where the claims are clearly related and derive from the same event courts have held that the claims are not sufficiently one constitutional case if they are related sequentially or if the claims are based on different legal theories.

*Angel Music, Inc. v. ABC Sports, Inc.*, 609 F.Supp. 764, 768 (S.D.N.Y.1985) (citations omitted).

Based upon their pleadings and submissions to this Court, plaintiff has failed to establish that the claims against the governmental defendants and tenant-defendants are so closely related as to constitute one case that would ordinarily be expected to proceed in one forum. Because the claims do not arise from a common nucleus of operative facts, this Court lacks the constitutional power to exercise jurisdiction over the tenant-defendants.[10]

**9.** Plaintiffs' Letter Memorandum dated May 22, 1989, p. 4.

**10.** In light of this ruling, the Court need not consider the second stage of analysis—whether

Congress in the statutes conferring jurisdiction has not expressly or by implication negated the existence of jurisdiction. *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

## 2. Discretionary Considerations

■ "Pendent jurisdiction is a doctrine of judicial discretion, not of plaintiff's right ..." *Mahoney v. National Organization for Women*, 681 F.Supp. 129 (D.Conn.1987). Even if the Court did have the power to hear the pendent-party claims, it would exercise its discretion not to do so. In exercising its discretion, this Court should consider judicial economy, convenience and fairness to the parties and comity. *Sparks v. Hershey*, 661 F.2d 30, 33 (3rd Cir.1981), *citing Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. These considerations mitigate against the exercise of pendent jurisdiction.

If all the claims are tried together, the City defendants would be enmeshed in a suit involving numerous issues with which they have no connection.[11] The actions against the tenant defendants are basically detailed landlord-tenant matters which would be best brought in the appropriate state landlord-tenant court. Such a court has particular expertise and is likely to provide relief, if warranted, more quickly than this Court. Indeed, landlord-tenant issues are issues peculiar to local concern. Notions of comity suggest that they be addressed in local courts.

Although it may be convenient for plaintiff to try its entire case in the federal forum, plaintiff has not persuaded the Court that the state court forum is inefficient. Plaintiff has candidly admitted that it fears an adverse ruling in the state forum. This is equally unpersuasive. Forum shopping is condemned by the courts. Plaintiff's mere supposition that it will fare better in federal court does not warrant trying the state claims here. Based upon these considerations, even if the Court were empowered to hear the state fraud and contract claims, it would decline to do so.

The Court notes, however, that the Second Circuit has found that pendent party jurisdiction may be exercised pursuant to a main claim under § 1983 and § 1343(a)(3). *See Almenares v. Wyman*, 453 F.2d 1075 (2d Cir.1971), *cert. denied*, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972).

## B. *Rule 11 Sanctions*

■ Rule 11 of the Federal Rules of Civil Procedure, as amended, requires that if a party is represented by an attorney, the attorney must sign all papers submitted to the court. It further states:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existent law or a good faith argument for extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause any unnecessary delay or needless increase in the cost of litigation.

Rule 11 is posited as a directive. If the rule is violated, the court *"shall* impose upon the person who signed [the violative paper] ... an appropriate sanction...." Fed.R.Civ.P. 11. "Accordingly, where the scriptures of the rule have been transgressed, it is incumbent upon the district court to fashion proper sanctions." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985). The rule is violated "where it is patently clear that a claim has absolutely no chance of success ...," *Id.*, but courts should avoid hindsight and resolve all doubts in favor of the signor. *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.1986).

Applying *Eastway* and its progeny, the Court finds that sanctions are unwarranted in the present case. The Court does not find that plaintiff knew or should have known that this Court lacked subject matter jurisdiction over plaintiff's fraud and contract claims. Moreover, the Court is unconvinced that plaintiff brought its claims against the tenant-defendants for an improper purpose. Under these circum-

11. The Court rejects plaintiffs' argument that the tenant defendants are "necessary parties" subject to joinder under F.R.Civ.P. 19.

stances, the Court declines to impose sanctions against plaintiff.[12]

### III.   Conclusion

For the reasons stated above, the Court dismisses plaintiff's counts ten through forty–five of the Complaint for lack of subject matter jurisdiction.

SO ORDERED.

---

**12.** *Gutterman v. Eimicke,* 125 F.R.D. 348 (1989) is inapposite.   In that case Judge Dearie of the Eastern District assessed sanctions against plaintiff-landlords and their counsel for joining various tenants as defendants in a suit against state officials challenging the constitutionality of a state housing regulation.   Unlike the present case, in *Gutterman* the court expressly found that plaintiffs had absolutely no chance of success on their constitutional claims and that plaintiffs had asserted claims against the tenant-defendants for an improper purpose.